**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Elisha COMBS, Defendant-Appellee.**

**No. 72–1137.**

United States Court of Appeals,
Sixth Circuit.

Oct. 10, 1972.

Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., for plaintiff-appellant.

Dan Jack Combs, Pikeville, Ky., Francis D. Burke, Pikeville, Ky., on briefs, for defendant-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and KENT, Circuit Judges.

EDWARDS, Circuit Judge.

The government appeals from the District Judge's grant of a motion to suppress evidence (a sawed-off shotgun) which had been seized after a search of defendant Elisha Combs' Cadillac automobile. The Cadillac had been parked in a lot adjoining the home of Elisha's father, Pearl Combs.

The facts in this case are complicated. They start with a phone call from the Police Chief of Newport, Kentucky, telling the Police Chief of Hazard, Kentucky, that he had an arrest warrant for Raymond Combs (another of the sons of Pearl Combs) for possession of stolen property. He said that Raymond might be in Hazard, driving a 1968 Chevrolet. The Hazard Police Chief thereupon went to Pearl Combs' house with three other officers. The testimony accepted by the District Judge was that as they approached the house, one of the officers who knew Raymond saw him on the porch and saw him turn and go into the house. The police entered the house and went through it thoroughly, observing in the process a large number of firearms. Raymond had escaped.

Thereupon the officers reported to the Newport Police Chief what had happened and he told them that Pearl Combs (and Elisha) had previously been convicted of a felony. The Hazard Chief then went to the United States Commissioner and obtained a search warrant for "the premises," including Pearl Combs' house and "all outbuildings and vehicles thereon, including any and all adjacent properties used by the said Pearl Combs."

The Hazard police then searched Pearl Combs' house and seized a veritable arsenal of weapons, including 48 firearms and over 500 rounds of ammunition. Also searched was a Cadillac automobile which the officers had observed parked about twenty feet from the house. It was a new Cadillac. It had the spare tire in the rear seat and the car was sitting low to the ground in the rear. There is testimony that it was parked where the Combs family generally parked their cars, although it appears that the ground on which it was parked may not actually have belonged to Pearl Combs.

The officers asked Elisha for the key to the trunk and he denied that he had it. Shortly thereafter he slipped away from the officers and disappeared. Under these circumstances, they broke into the trunk and found a large inventory of stolen goods, and 29 shotguns, rifles and automatic weapons. The sawed-off shotgun which this appeal concerns was found later when the contents of the trunk were inventoried at the police station.

We believe that the warrant, under a nontechnical reading, *see* United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), authorized what the officers did here. The principal question appears to us to be whether or not the information supplied to the Commissioner was adequate to support the breadth of the warrant. We conclude that the affidavit was sufficient in this respect.

While the affidavit supplied no information relating directly to the new Cadillac where the sawed-off shotgun was found, it did supply ample facts to establish probable cause to believe a crime was being committed. The Hazard Police Chief swore:

"[T]he facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: I, the Chief of Police of Hazard, Kentucky, on October 13, 1970, at approximately 9:30 P.M., while on official duty attempting to execute an arrest warrant, together with Police Officers Robert G. Byrgo, Edgar Reynolds, Jr., and Captain George R. Smith, saw in the house situated on the Pearl Combs premises, a large number of firearms and ammunition some of which firearms were covered with blankets and sheets, some in uncovered stacks, and some sitting in corners, behind doors, and along the walls of said house. I personally know that Pearl Combs is a convicted felon. I make this affidavit at 2:10 A.M., on October 14, 1970."

The record indicates that the Cadillac was on "the premises" situated closely enough to the house to be within legal concept of curtilage. *See* Fine v. United States, 207 F.2d 324 (6th Cir. 1953); United States v. Potts, 297 F.2d 68 (6th Cir. 1961). The record also indicates that this house was located in a remote area. The arsenal found therein could hardly have been brought there by any means other than automobile. Under these circumstances we feel it was permissible for the Commissioner to infer from the facts before him probable cause to believe that vehicles on the premises contained similar weapons to those found in the house.

The District Judge appears to have decided this case on the strength of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). It appears to us, however, that a later case, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1969), sanctions the police station inventory which was conducted here—particularly since in fact the officers who made the search had secured a search warrant which by its terms authorized it.

The judgment of the District Court is reversed and the case is remanded for further proceedings.