[Crim. No. 16723. In Bank. Aug. 14, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
CLAY DUMAS, Defendant and Appellant.

874

---

**COUNSEL**

Tolbert, Wooden & Malone, John H. Wooden and Hugo E. Hill for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Howard J. Schwab, Robert F. Katz and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—After the superior court denied defendant's motion under Penal Code section 1538.5 to suppress the evidence against him on the ground it was obtained in the course of an unreasonable search, he pleaded guilty to and was convicted of two counts of receiving stolen property in violation of Penal Code section 496. Defendant bases his appeal from the judgment on the denial of this motion.

On May 11, 1970, officers of the Los Angeles Police Department obtained a warrant to search defendant's apartment, including "all trash cans, storage areas, garages and carports which are assigned to and/or used by occupants of the aforesaid apartment," for certain stolen railroad bonds and bank checks and certain narcotics and narcotics paraphernalia. The warrant issued pursuant to a police officer's affidavit which asserted that a confidential informant had reported he recently saw these articles in defendant's possession. Neither the warrant nor the affidavit made reference to defendant's automobile or to any other vehicle.

Equipped with the warrant, a group of police officers converged on the apartment described therein and forcibly entered without announcing their authority or purpose. Inside they found defendant and a young woman, and arrested defendant immediately. The subsequent search of the apartment revealed none of the articles named in the warrant. In the course of the search, however, the officers discovered an automobile registration certificate in the name of defendant and a set of automobile keys. An automobile meeting the description on the registration certificate was then found parked in the street two lots (about 100 feet) away from defendant's apartment building. The officer in charge of the operation, who testified he suspected the automobile might contain the items specified in the search warrant, ordered it searched without obtaining defendant's consent. In the trunk of the vehicle the officers found the stolen securities, a loaded revolver, and an aluminum foil packet apparently containing some narcotic substance.[1]

---

[1] The officer in charge had also been informed by another officer that the latter had *seen* a firearm in the trunk of the vehicle by looking through a side window into an alleged opening behind the back seat. Examination of the vehicle at the section 1538.5 hearing proved to the court's satisfaction that no such observation could have been made. The officer's creative imagination obviously cannot provide the probable cause necessary to justify the warrantless search in this case.

I

■ Defendant first contends the search warrant in question is defective because the supporting affidavit does not clearly establish the reliability of the confidential informant. This objection is not well taken. The affidavit states that the informant had provided information to the United States Secret Service "On one separate occasion that resulted in three (3) arrests being made of three persons and the information resulted in three persons being held to answer at a commissioner's hearing and are now awaiting trial in the U.S. District Court." ■ In order to establish the reliability of an informant it is not necessary to relate that his prior information led to convictions. It is sufficient that the prior information was accurate or was "of such substance as to cause a reasonable person to conclude that it is reliable." (*People* v. *Swayze* (1963) 220 Cal.App.2d 476, 490 [34 Cal.Rptr. 5].) In *People* v. *Prewitt* (1959) 52 Cal.2d 330 [341 P.2d 1], we recognized that information from an informant who had twice previously provided police with tips that had led to arrests and trial was sufficiently reliable to establish probable cause for an arrest. Prior information that had proved accurate in leading to two valid arrests was also held sufficient to establish reliability in *People* v. *Richardson* (1970) 6 Cal. App.3d 70 [85 Cal.Rptr. 607]. If the fact of prior valid arrests of suspects is a sufficient index of an informant's reliability, the fact of a finding of probable cause to hold suspects by a federal magistrate is even more significant. (See *People* v. *Superior Court* (1972) 6 Cal.3d 704, 714 [100 Cal.Rptr. 319, 493 P.2d 1183].)

■ The affidavit also set forth substantial corroboration of the information provided by the informant. The informant stated he had seen Delaware, Lackawanna and Western Railroad bonds in defendant's possession and that defendant advised him the bonds had a face value of approximately $25,000 and were stolen. Defendant also told the informant, as of May 7, 1970, that he had been in possession of the bonds for eight weeks. Independent police investigation established that 33 Delaware, Lackawanna and Western Railroad bonds had been stolen between February 27 and March 2 of that year. Thus, independent investigation corroborated an important detail in the informant's report, and added to the probability that his information was reliable.[2]

---

[2]Defendant also contends his arrest was illegal. If, however, the informant's information was sufficiently reliable to support the issuance of a search warrant, it was also sufficient to establish probable cause for defendant's arrest. (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].)

## II

Defendant's second contention is that the officers violated Penal Code section 1531 in failing to announce their authority or purpose before forcibly entering his apartment. Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if after notice of his authority and purpose, he is refused admittance." We have held that strict compliance with demand and notice requirements may be excused "if the specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, or permit the destruction of evidence." (*People* v. *Tribble* (1971) 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589]; *People* v. *Gastelo* (1967) 67 Cal.2d 586, 587-588 [63 Cal.Rptr. 10, 432 P.2d 706]; *People* v. *Maddox* (1956) 46 Cal.2d 301, 306 [294 P.2d 6].) In the present case, the officer in charge of the search operation testified at the section 1538.5 hearing he had been informed by the confidential informant that defendant possessed several firearms in his apartment and that he invariably answered the door with a loaded gun in his hand. The informant told the officer he had personally observed defendant answer the door in this manner.

The case presents somewhat unusual facts in that the People attempt to justify noncompliance with announcement requirements on the basis of circumstances of which the officers were aware *before* approaching defendant's residence to effect entry. In the typical case the officer discovers the facts that justify immediate entry only *after* approaching the residence. In *People* v. *Maddox* (1956) *supra,* 46 Cal.2d 301, for example, an officer who had knocked on the door of defendant's home to make a narcotics arrest heard a voice say "Wait a minute" and also heard the sound of retreating footsteps. We held it was not unreasonable for the officer to believe that further delay in entry would facilitate secretion or destruction of evidence. Likewise in *People* v. *Tribble* (1971) *supra,* 4 Cal.3d 826, 832-833, officers heard running footsteps inside the defendant's residence as they approached to make entry. This perception, combined with the officers' discovery of a firearm in an automobile in defendant's driveway and their knowledge of the violent character of the crimes of which defendant was accused, was sufficient to excuse compliance with section 844.

In some exceptional circumstances, however, we have upheld unannounced entry on the basis of information received by the officers prior to arrival at the scene of the entry. In *People* v. *Smith* (1966) 63 Cal.2d 779, 797 [48 Cal.Rptr. 382, 409 P.2d 222], and *People* v. *Gilbert* (1965) 63 Cal.2d 690, 707 [47 Cal.Rptr. 909, 408 P.2d 365], the officers had good cause to believe that the persons they were seeking were armed and that

they had shot—and in one case killed—police officers. In *People* v. *Hammond* (1960) 54 Cal.2d 846, 854 [9 Cal.Rptr. 233, 357 P.2d 289], unannounced entry was also excused on the basis of prior information that the defendant was presently armed and was under the influence of heroin. The proposition that unannounced entry may be excused on the basis of information received before reaching the location at which entry is to be effected, when the information reasonably leads the officer to believe that compliance would increase his peril or frustrate the arrest, has been reaffirmed more recently in *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 323 [82 Cal.Rptr. 348, 461 P.2d 628]. The ability of police officers to rely on such prior information in deciding to effect an unannounced entry is also clearly established by *People* v. *De Santiago* (1969) 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d 353], in which we stated that no announcement is required "where officers have obtained particular information which leads them to reasonably conclude that the occupants of an apartment or residence have specifically resolved to effect disposal in the event of police intrusion or have made specific preparations in that regard."

Thus, compliance with the announcement requirements may be excused where police officers, on the basis of previously obtained information, supported by facts occurring on the scene, are aware at the time they approach particular premises to effect entry that they are faced with an emergency situation as defined in our decisions.

In the present case the information provided by the confidential informant that defendant possessed several firearms is insufficient by itself to excuse compliance with section 1531. We have recognized that one of the primary purposes of section 1531, in addition to the protection of individual privacy, is to prevent possible violent responses that might be aroused in a startled and fearful householder suddenly confronted with unknown persons breaking into his home for unannounced reasons. (*Duke* v. *Superior Court* (1969) *supra,* 1 Cal.3d 314, 321.) The danger that such a confrontation will result in serious injury or death to the occupant, police officers, or innocent bystanders is obviously intensified when the householder is in possession of a firearm. Thus, where the police are aware of such a weapon, the case for requiring them to give notice of their authority and purpose becomes more rather than less compelling.

Police knowledge of the existence of a firearm excuses compliance with announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements. (E.g., *People* v. *Smith* (1966) *supra,* 63 Cal.2d 779, 797; *People* v. *Gilbert* (1965) *supra,* 63 Cal.2d 690, 707.) This belief must be

based on specific facts and not on broad, unsupported presumptions. In *People* v. *Gastelo* (1967) *supra,* 67 Cal.2d 586, we held that a presumed propensity of narcotics violators to quickly dispose of contraband is not sufficient to excuse compliance with announcement requirements in every case in which entry is effected to search for narcotics. It is no more acceptable to justify unannounced entry on the basis of a presumed propensity of firearm owners to shoot at approaching police officers in every case in which the police possess information that there are firearms at the location to be entered. We observe that many suspects with no intention whatever of attacking a police officer might have understandable reasons and legal grounds for possessing firearms.[3]

In the present case, however, the police had reliable information that defendant not only possessed weapons but habitually answered the door armed with a firearm. They could reasonably infer from this activity that a substantial possibility existed he would employ deadly force in order to prevent his apprehension. As the officers approached the location to be searched, they became aware of no further circumstances that would defeat this inference. They could therefore reasonably conclude at the time of entry that they were faced with an emergency and that compliance with the announcement requirements would substantially increase their peril. On these facts we hold that the officers' failure to comply with section 1531 does not give rise to an application of the exclusionary rule.

### III

Defendant's final contention, that the search of his automobile was not supported by the warrant and was constitutionally unjustified in the absence of a warrant, requires somewhat more extensive analysis.

The text of the Fourth Amendment to the Constitution of the United States bears frequent recitation: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." An essentially identical but independent guarantee of personal privacy is set forth in article I, section 19, of the California Constitution. (*People* v. *Cahan* (1955) 44 Cal.2d 434, 438 [282 P.2d 905, 50 A.L.R.2d 513];

---

[3] *People* v. *Gastelo* (1967) *supra,* 67 Cal.2d 586, emphasized that compliance with announcement requirements could be excused only on the basis of specific facts and not on the basis of blanket presumptions.

*People* v. *Triggs* (1973) 8 Cal.3d 884, 891-892, fn. 5 [106 Cal.Rptr. 408, 506 P.2d 232]; *People* v. *Krivda* (1973) 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457].) The broad language of these provisions, the courts have held, requires police to seek the impartial approval of a judicial officer before undertaking most searches. The margin of security afforded by the search warrant may be dispensed with in only "a few specifically established and well-delineated" circumstances. (*Katz* v. *United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507].)

The warrant obtained by the police officers in this case does not support their search of defendant's automobile. ■ The constitutional requirement that a warrant "particularly describ[e] the place to be searched" compels the conclusion that the privilege to search created by a warrant does not extend beyond the place or places described therein. Thus in *Skelton* v. *Superior Court* (1969) *supra*, 1 Cal.3d 144, 155, we stated that "[w]e are mindful of the general rule that when a search is made pursuant to a warrant, the search and seizure are limited by the terms of the warrant. Thus only the premises described in the warrant may be searched and only the property described in the warrant may be seized."

Defendant's automobile was not specifically mentioned in the warrant nor was it found in any of the places that were specifically mentioned. The People contend that the language of the warrant reading "storage areas . . . used by occupants of the aforesaid apartment" is sufficiently broad to include defendant's automobile. While an ordinary passenger automobile conceivably can be used as a receptacle for the storage of various articles it is hardly a storage area of an apartment within the ordinary meaning of that phrase, and it is highly doubtful that the magistrate issuing the warrant intended to extend its scope beyond sites such as closets, lockers, storerooms, and sheds that the expression storage area of an apartment normally encompasses.[4] The description in a search warrant must be sufficiently definite that the officer conducting the search "can with reasonable effort ascertain and identify the place intended." (*Steele* v. *United States* (1925) 267 U.S. 498, 503 [69 L.Ed. 757, 760, 45 S.Ct. 414].) Nothing should be left to the discretion of the officer. (*Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74].) The broad interpretation that the People urge would violate these principles by allowing police officers excessive latitude to determine the scope of any war-

---

[4]An automobile used "primarily for the transportation of property" must be registered as a commercial vehicle rather than as an ordinary passenger vehicle. (Veh. Code, § 260.) Neither the Vehicle Code nor any statute defines an automobile as a storage area.

rant containing language which only they suggest is ambiguous concerning the place to be searched.[5]

■ While it is not necessary that a search warrant state the name of the owner or a correct license number of the automobile to be searched (*Wangrow* v. *United States* (8th Cir. 1968) 399 F.2d 106, 115, cert. den. (1968) 393 U.S. 933 [21 L.Ed.2d 270, 89 S.Ct. 292]), we conclude that a warrant supporting the search of a motor vehicle must, at the very least, include some explicit description of a particular vehicle or of a place where a vehicle is later found. (See generally Note 47 A.L.R.2d 1444.) Inasmuch as the warrant in the present case described neither the vehicle nor the site of the vehicle, it cannot serve to validate the search.

## IV

■ We must therefore determine whether the circumstances of the case justified a warrantless search. With respect to this issue, the People carry the burden of proving the search reasonable. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)[6]

The pattern of prior decisions suggests that one of the most crucial determinants of the validity of warrantless searches is the nature of the place subjected to search. This pattern has been created by the interweaving of constitutional concepts with fundamental human needs and expectations.

---

[5]This determination is not in conflict with decisions holding that a warrant to search "premises" located at a particular address is sufficient to support the search of outbuildings and appurtenances in addition to a main building when the various places searched are part of a single integral unit. (E.g., *People* v. *Fitzwater* (1968) 260 Cal. App.2d 478 [67 Cal.Rptr. 190] (search of dismantled van used as shed on warehouse lot); *People* v. *Grossman* (1971) 19 Cal.App.3d 8 [96 Cal.Rptr. 437] (search of carport appurtenant to apartment); *United States* v. *Long* (8th Cir. 1971) 449 F.2d 288, 294 (search of trash barrel located outside building); *Fine* v. *United States* (6th Cir. 1953) 207 F.2d 324, cert. den. (1954) 346 U.S. 923 [98 L.Ed. 417, 74 S.Ct. 310] (search of shed located some 20 feet behind main house); compare *United States* v. *Thomas* (N.D.Cal. 1963) 216 F.Supp. 942 (search of building some 500 feet from structure named in warrant, which could only be reached by a different road and was separated by gardens, fence, parking area and reservoir, held invalid).) See also *United States* v. *Combs* (6th Cir. 1972) 468 F.2d 1390, in which the warrant referred to "the premises" including " 'all outbuildings *and vehicles thereon,* including any and all adjacent properties used by the said Pearl Combs.' " (Italics added.) The court upheld a search of an automobile parked about 20 feet from the Combs house, where the Combs family generally parked their cars, but apparently not on property actually belonging to Pearl Combs.

[6]The search of defendant's automobile was clearly not a search incident to his arrest since the automobile was not within his immediate control in the sense that he could have obtained a weapon or destructible evidence from it. (*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].)

The courts have implicitly recognized that man requires some sanctuary in which his freedom to escape the intrusions of society is all but absolute.[7] Such places have been held inviolate from warrantless search except in emergencies of overriding magnitude, such as pursuit of a fleeing felon (*Warden* v. *Hayden* (1967) 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642]) or the necessity of action for the preservation of life or property (*People* v. *Roberts* (1956) 47 Cal.2d 374, 377 [303 P.2d 721]; *People* v. *Sirhan* (1972) 7 Cal.3d 710, 735-741 [102 Cal.Rptr. 385, 497 P.2d 1121]; cf. *Chimel* v. *California* (1969) *supra,* 395 U.S. 752.)[8] Certain other places carry with them an expectation of privacy which, although considerable, is less intense and insistent. These places may be searched upon probable cause alone under circumstances of less demanding urgency.[9] Still other sites are regarded as so public in nature that searches are justifiable without any particular showing of cause or exigency.[10] This hierarchy of protection

[7]The first Justice Harlan described it thus in *Interstate Commerce Comm.* v. *Brimson* (1894) 154 U.S. 447, 479 [38 L.Ed. 1047, 1058]: "the principles that embody the essence of constitutional liberty and security forbid all invasions on the part of the government and its employés of the sanctity of a man's home, and the privacies of his life."

[8]Homes and offices clearly fall within this category of maximum protection (*Vale* v. *Louisiana* (1970) 399 U.S. 30 [26 L.Ed.2d 409, 90 S.Ct. 1969]; *Silverman* v. *United States* (1961) 365 U.S. 505, 511-512 [5 L.Ed.2d 734, 738-739, 81 S.Ct. 679]; *Agnello* v. *United States* (1925) 269 U.S. 20, 33 [70 L.Ed. 145, 149, 46 S.Ct. 4, 51 A.L.R. 409]; see also *Chambers* v. *Maroney* (1970) 399 U.S. 42, 48 [26 L.Ed.2d 419, 426, 90 S.Ct. 1975]; Schwartz, A Commentary on the Constitution of the United States (1963) pt. III, pp. 178 ff.) as do hotel rooms (*Stoner* v. *California* (1964) 376 U.S. 483 [11 L.Ed.2d 856, 84 S.Ct. 889]; *United States* v. *Nelson* (6th Cir. 1972) 459 F.2d 884).

[9]This secondary degree of protection applies to automobiles (*Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280]; *Chambers* v. *Maroney* (1970) *supra,* 399 U.S. 42; *People* v. *Laursen* (1972) 8 Cal.3d 192 [104 Cal.Rptr. 425, 501 P.2d 1145]) and to trunks consigned to a common carrier (*People* v. *McKinnon* (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097]). It has been held applicable to a mobile camper van (*United States* v. *Miller* (10th Cir. 1972) 460 F.2d 582), suitcases left outside an apartment door (*United States* v. *Johnson* (2d Cir. 1972) 467 F.2d 630, 638-639), and articles left in a yard in places not open to public view (*United States* v. *Brown* (1st Cir. 1972) 457 F.2d 731, 734, cert. den., 409 U.S. 843 [34 L.Ed.2d 82, 93 S.Ct. 42]). It also appears to apply to a trash can placed by the curb for the disposal of its contents (*People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262], vacated (1972) 409 U.S. 33 [34 L.Ed.2d 45, 93 S.Ct. 32], opinion on remand (1973) 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457], see discussion *post*).

[10]This category includes places that may be classified as "open fields" (*Hester* v. *United States* (1924) 265 U.S. 57, 58-59 [68 L.Ed. 898, 899-900, 44 S.Ct. 445]), and places in which a defendant has not exhibited a subjective expectation of privacy or where such an expectation would be unreasonable (*People* v. *Bradley* (1969)

arises not from the application of differing constitutional standards to various locales, but rather from an application of a single standard of reasonableness to all places in accordance with a fundamental understanding that a particular intrusion into one domain of human existence seriously threatens personal security, while the same intrusion into another domain does not.

The United States Supreme Court has held that homes and offices fall into the first category, while automobiles fit into the second. In *Carroll* v. *United States* (1925) *supra*, 267 U.S. 132, the court ruled that where police officers, confronted with unforeseeable circumstances, have probable cause to believe an automobile contains articles entitled to be seized, and where delay would enhance the possibility the articles would be destroyed or placed beyond the reach of the officers, an immediate warrantless search of the vehicle is justified. In similar circumstances, however, the court barred the warrantless search of a home, even though an equally pervasive danger existed that the items to be seized would disappear before a warrant could be obtained. (*Vale* v. *Louisiana* (1970) *supra*, 399 U.S. 30.)

The decisions upholding warrantless searches of automobiles evidence no distinction between the treatment of vehicles the police stop on the highway and vehicles they find parked at the curb. (See, e.g., *United States* v. *Scott* (9th Cir. 1972) 458 F.2d 12; *United States* v. *Castaldi* (7th Cir. 1971) 453 F.2d 506.) We must pause to consider, however, whether the position of defendant's automobile in the street near his apartment house requires the vehicle be afforded some special protection it would not ordinarily receive under *Carroll* were the car parked some distance from the house.[11] The answer appears to be negative under the authority of *People* v. *Terry* (1964) 61 Cal.2d 137, 152-153 [37 Cal.Rptr. 605, 390 P.2d 381] (1969) 70 Cal.2d 410, 428 [77 Cal.Rptr. 460, 454 P.2d 36], in which we upheld the warrantless search of an automobile parked in a common garage area of the defendant's apartment when police officers had probable cause to believe the vehicle contained marijuana. If an automobile parked in such a location may be searched without a warrant, it

---

1 Cal.3d 80, 85 [81 Cal.Rptr. 457, 460 P.2d 129]). (See also *People* v. *Stout* (1967) 66 Cal.2d 184 [57 Cal.Rptr. 152, 424 P.2d 704] (property in place indicating it was abandoned).)

[11]In *Scher* v. *United States* (1938) 305 U.S. 251 [83 L.Ed. 151, 59 S.Ct. 174], the United States Supreme Court upheld the search of an automobile in the defendant's private garage. The case is not necessarily controlling, however, because the defendant admitted to the officer before the search that there was contraband in the automobile trunk, and the court may therefore have believed that he in effect consented to the search. The court also emphasized that the vehicle had just entered the garage and was immediately followed by the observing officer.

seems to follow that an automobile parked by the curb near a residence may be so searched.

In *People* v. *Krivda* (1971) *supra,* 5 Cal.3d 357, however, we held invalid the search of a trash can that had been placed by the defendants on the public parkway near the curb in front of their home. It would be anomalous to hold that such a receptacle may not be searched without a warrant but that an automobile parked immediately adjacent to it is subject to such a search, inasmuch as an automobile undeniably evokes at least as great an expectation of owner privacy as a trash can. It has been suggested that *Krivda* is therefore inconsistent with the earlier *Terry* decision.

The police search in *Krivda* was activated solely by a tip from an anonymous informant that defendants were engaged in narcotics activities and a police investigation which had revealed that one of the defendants had previously been arrested for narcotics activity. This information would clearly be insufficient under the standards established in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584], to provide probable cause for the issuance of a search warrant. It follows automatically that probable cause did not exist for a warrantless search. (*Skelton* v. *Superior Court* (1969) *supra,* 1 Cal.3d 144, 150.) *Krivda,* therefore, did not preclude the possibility that a warrantless search of the trash can would have been valid had probable cause existed to support it. In this light, no conflict with *Terry* appears, and it is clear that an automobile does not become immune from the *Carroll* rule permitting warrantless search simply because it is parked on or near a defendant's premises. (See *United States* v. *Menke* (3d Cir. 1972) 468 F.2d 20.)[12]

In the case at bar, accordingly, the police officers were empowered under the *Carroll* doctrine to search defendant's automobile so long as it can be demonstrated that (1) exigent circumstances rendered the obtaining of a warrant an impossible or impractical alternative, and (2) probable cause existed for the search. We conclude that both of these conditions existed at the time of the search. The United States Supreme Court has held that exigent circumstances justifying a warrantless automobile search exist where the police unforeseeably discover facts furnishing probable cause for the search under circumstances in which the evidence may be destroyed or removed from the reach of the officers if a search or seizure is not carried

---

[12]*Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 459-462 [29 L.Ed.2d 564, 578-580, 91 S.Ct. 2022], does not appear to alter this conclusion. (See *People* v. *McKinnon* (1972) *supra,* 7 Cal.3d 899, 910-911.)

out immediately. (*Chambers* v. *Maroney* (1969) *supra,* 399 U.S. 42, 51 [26 L.Ed.2d 419, 428]; cf. *Coolidge* v. *New Hampshire* (1971) *supra,* 403 U.S. 443, 459-462 (Stewart, J.).) Here the officers were apparently unaware that defendant possessed an automobile at the time they obtained the warrant. They unexpectedly discovered the existence of the vehicle only after they had entered defendant's apartment. There was at least one other person in the apartment at the time of defendant's arrest who would have been in a position to move the car or destroy the evidence if the police did not conduct an immediate search or seizure. Under these circumstances, we hold it was not practicable for the police to secure a warrant under the standards set forth in *Carroll* and *Chambers.*

■ Probable cause for a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched. (*People* v. *Superior Court* (1970) 3 Cal.3d 807, 815-816 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R. 3d 559]; *Skelton* v. *Superior Court* (1969) *supra,* 1 Cal.3d 144, 150.) ■ The transcript of the section 1538.5 hearing reveals that the officer directing the search of defendant's automobile believed the objects listed in the search warrant could be found in the vehicle and that he ordered the search on this basis. In the unusual circumstances of this case, we hold that his suspicion was reasonable. It could reasonably be concluded that defendant had not yet disposed of the bonds inasmuch as he had told the informant he had possessed the bonds for eight weeks without succeeding in finding a buyer. In light of this difficulty in "fencing" the bonds, it was unlikely that he disposed of them in the four days since the informant had last seen them. A thorough search of defendant's apartment, however, failed to uncover the bonds. Upon completing this search the officers "were entitled to use their reasoning faculties upon all the facts of which they had previous knowledge" (*Carroll* v. *United States* (1925) *supra,* 267 U.S. 132, 161 [69 L.Ed. 543, 554]) and to conclude that defendant had probably hidden the easily movable stolen property in his automobile. The bonds might have been secreted elsewhere, of course, but we cannot disregard the likelihood that a person who holds stolen property he wishes to sell will attempt to conceal it in a place under his control that is nearby and apparently secure. (See *United States* v. *Bailey* (9th Cir. 1972) 458 F.2d 408, 413 (Kilkenny, J., dissenting).) When the officers were unable to discover the bonds in defendant's apartment, his automobile, parked outside on the street, quite naturally became an object of strong suspicion.

We conclude, therefore, the police officers had probable cause to search defendant's automobile under unforeseeable circumstances in which the

securing of a warrant was impracticable. The search was consequently reasonable, and the trial court did not err in denying defendant's motion to suppress the evidence discovered therein.

The judgment is affirmed.

McComb, J., Burke, J., and Clark, J., concurred.

**SULLIVAN, J.**—I concur in the judgment and I agree with those portions of the majority opinion which hold that the affidavit in support of the search warrant was constitutionally sufficient, that the police officers in executing the warrant were properly excused from complying with the requirements of section 1531 of the Penal Code, and that the warrant itself did not authorize a search of the automobile. Furthermore, I agree that the warrantless search of the automobile was proper since in my view the officers had reasonable cause to believe that the automobile contained contraband. (*Chambers* v. *Maroney* (1970) 399 U.S. 42, 52 [26 L.Ed.2d 419, 428-429, 90 S.Ct. 1975]; *People* v. *Laursen* (1972) 8 Cal.3d 192, 201 [104 Cal. Rptr. 425, 501 P.2d 1145].)

I do not join, however, in the majority's gratuitous attempt to establish a hierarchy of Fourth Amendment protection dependent upon fictional levels or degrees of privacy which persons supposedly assign to houses, cars, trunks and trash cans. No authority is cited to support this thesis. Rather, the majority choose to group various state and federal court decisions into categories that, one is asked to assume, constitute de facto support of this broad proposition.[1] I believe that such a classification in terms of expectation of privacy is confusing, if not inappropriate, and tends to dilute, if not annul, our responsibility to determine whether, under the circumstances of each case, a warrantless search is unreasonable and in violation of the Fourth Amendment.

In addition, I must express grave concern over the implications that arise from the majority's view that "[u]pon completing this search the officers 'were entitled to use their reasoning faculties upon all the facts of which they had previous knowledge' (*Carroll* v. *United States* (1925) *supra*, 267 U.S. 132, 161 [69 L.Ed. 543, 554]) and to conclude that defendant

---

[1]Indeed, cases upholding warrantless searches of automobiles have distinguished searches of residences not on the basis of any difference in expectation of privacy, but because of exigent circumstances—the mobility of the automobile and the danger that, without immediate search or impoundment, the evidence would be lost. (*Chambers* v. *Maroney, supra,* 399 U.S. 42, 51 [26 L.Ed.2d 419, 428]; *People* v. *Laursen, supra,* 8 Cal.3d 192, 201.)

had probably hidden the easily movable stolen property in his automobile." (*Ante,* at p. 885.) I fear that this broad statement may be interpreted by some as authorizing the wholesale transformation of unsuccessful searches by warrant into fishing expeditions in other areas not covered by the warrant.

It is clear that the police had reasonable cause to believe that defendant's automobile contained contraband. This belief, however, did not automatically emerge full-blown from the fruitless search of the house pursuant to the warrant. Prior to that search, the police had substantial information through a corroborated tip that defendant possessed stolen bonds and other contraband that he wished to sell. On the basis of this information, the police secured a warrant to search those places over which the defendant had control—his apartment and appurtenances—in which the contraband was likely to be found. The vehicle, registered to defendant and parked close to the apartment, was certainly a likely hiding place for the easily movable stolen property that defendant was trying to sell,[2] and undoubtedly it could have been included in the warrant had the application so requested. (Cf. *United States* v. *Combs* (6th Cir. 1972) 468 F.2d 1390, 1392.) Apparently, the officers did not learn of the automobile's existence until they had searched the house.[3] At that point they possessed the same probable cause to search the car which they had possessed at the time of application for the warrant. Acting upon that probable cause the officers proceeded to search the automobile. Their search was not made any more reasonable by the fact that their search of the house was unsuccessful. To so reason, as the majority seem to do, would be to advance the dubious thesis that an unsuccessful search of one potential location of contraband under a suspect's control—be it house, boat, cabin, car or garbage can—generates probable cause for the search of other locations, even though probable cause therefor may not be independently present under the circumstances. In short, I see no need for the elaborate categorization constructed by the majority. The case at bench merely adds up to this: the police, based upon the information in their possession, had probable cause to conduct a warrantless search of defendant's automobile upon discovering its existence.

Wright, C. J., and Tobriner, J., concurred.

---

[2]The automobile was surely as likely a hiding place as the "trash cans, storage areas, garages and carports" which were mentioned in the warrant.

[3]Contrast *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 460-462 [29 L.Ed.2d 564, 579-580, 91 S.Ct. 2022], where the Supreme Court noted that the police "had known for some time of the probable role of the Pontiac car in the crime." (*Id.* at p. 460 [29 L.Ed.2d at p. 579].) The officers should thus have secured a warrant before searching the vehicle.