Filed 5/13/13  P. v. Harvey CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C066662 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F3246) |
| v. | |
| MICHAEL ALLAN HARVEY, | |
| Defendant and Appellant. | |

Defendant Michael Allan Harvey appeals the trial court's denial of his motion to suppress evidence found by police after conducting a traffic stop.  On appeal, defendant argues the search of the car he was driving violated his Fourth Amendment rights because the officer lacked probable cause to conduct the search.  We will affirm the trial court's ruling.

Defendant also appeals the imposition of a $40 court security fee, a $140 county penalty assessment, and a $60 DNA penalty assessment, and the inclusion of a narcotics registration requirement on the abstract of judgment, and claims he is entitled to additional presentence custody credit.  But for the $140 penalty assessment and the

1

custody credit entitlement, the People concede all of these claims. We will modify the judgment to reduce the court security fee to $30, reduce the DNA penalty assessment to $20, and strike the narcotics registration requirement.

We will affirm the judgment as modified.

FACTS AND PROCEEDINGS

The following facts were adduced at the suppression hearing:

On April 13, 2010, while on routine patrol, City of Redding Police Officer Todd Cogle recognized a passing car from an ongoing investigation with the local task force. Officer Cogle pulled into traffic behind the car, a Chevrolet Camaro, and noticed it had a cracked windshield, an object dangling from the rearview mirror and bald tires. The car, driven by defendant, turned into a residential neighborhood, where Officer Cogle conducted a traffic stop. As defendant pulled over, Officer Cogle observed him making "furtive movements" between the driver's door and the center console of the car.

Officer Cogle recognized defendant from a prior contact. Defendant provided his driver's license as requested, but could not find the registration or proof of insurance, explaining to Officer Cogle that he was aware of the problems with the car and was in the process of trying to get them fixed because he intended to purchase the car. Officer Cogle asked defendant to get out of the car. Defendant complied, informing Officer Cogle he had been on parole for assault with a deadly weapon conviction, and telling him, "You can pat me down for weapons but you cannot search my person." Officer Cogle patted defendant down and felt a large, hard object--a fixed, straight-blade knife-- concealed under defendant's shirt. Defendant said, "Shit. I forgot about that knife." Officer Cogle placed defendant under arrest, handcuffed him and placed him in the back of the patrol car.

Having recently recovered a stolen vehicle less than 100 yards away, Officer Cogle was concerned the Camaro might be subject to vandalism or theft and decided to

2

have it towed and impounded.  Officer Cogle searched the Camaro before it was towed. He first searched the area in which defendant had been furtively moving and found a plastic case containing ammunition.  He then searched under the driver's seat and found a box containing a .45-caliber revolver and more ammunition.

Defendant was charged with possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1)--count 1), carrying a concealed firearm in a vehicle with a prior (*id*., § 12025, subd. (a)--count 2), carrying a dirk or dagger (*id*., § 12020, subd. (a)(4)-- count 3), and possession of ammunition by a felon (*id*., § 12316, subd. (b)(1)--count 4). The complaint also alleged defendant had a prior strike conviction (Pen. Code, § 1170.12) and served two prior prison terms (Pen. Code, § 667.5, subd. (b)).

Pursuant to Penal Code section 1538.5, defendant filed a motion to suppress, among other things, all evidence obtained as a result of the search of the Camaro.  The People opposed the motion on various grounds, including that Officer Cogle had probable cause to search the vehicle and that the inventory search was proper according to standardized departmental procedure following a routine automobile impound. Following a hearing which consisted of testimony from Officer Cogle and argument from counsel for both parties, the court denied defendant's motion.

Defendant entered a plea of no contest to count 3 and admitted the prior strike and one prison prior in exchange for dismissal of all remaining charges and a stipulated state prison sentence of 44 months.  Consistent with the negotiated plea agreement, the court sentenced defendant to three years eight months in state prison, awarded him 76 days of presentence custody credit, and imposed specified fees and fines, including a $40 court security fee (Pen. Code, § 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), a $140 county penalty assessment (Gov. Code, § 76000, subd. (a)(1)), and a $60 DNA penalty assessment (Gov. Code, § 76104.7).

Defendant filed a timely notice of appeal.

3

DISCUSSION

I

*Denial of Motion to Suppress*

Defendant contends the trial court wrongfully denied his motion to suppress because the prosecution failed to prove there was probable cause for a warrantless search of the Camaro, and also failed to prove the search was a proper inventory search.

In reviewing a ruling on a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 922.) We defer to the trial court's factual findings, whether express or implied, when supported by substantial evidence and we independently determine whether the facts of the challenged search and/or seizure violated defendant's Fourth Amendment rights. (*People v. Lomax* (2010) 49 Cal.4th 530, 563; *People v. Ferguson* (2003) 109 Cal.App.4th 367, 371.)

Viewing the record in the light most favorable to the trial court's ruling, we conclude that Officer Cogle had probable cause to search the Camaro.

A.     *Probable Cause*

Under the automobile exception to the Fourth Amendment's warrant requirement, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits the police to search the vehicle without more. [Citation.]" (*Pennsylvania v. Labron* (1996) 518 U.S. 938, 940 [135 L.Ed.2d 1031, 1036]; see *United States v. Ross* (1982) 456 U.S. 798, 808 [72 L.Ed.2d 572, 583].) "Probable cause for a search exists where an officer is aware of facts that would lead a [person] of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched. [Citations.]" (*People v. Dumas* (1973) 9 Cal.3d 871, 885.) "In determining probable cause we must make a 'practical, common-sense decision whether, given all the

4

circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " (*People v. Allen* (2000) 78 Cal.App.4th 445, 450, quoting *Illinois v. Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548].) "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. [Citation.]" (*Texas v. Brown* (1983) 460 U.S. 730, 742 [75 L.Ed.2d 502, 514].)

Here, Officer Cogle had sufficient facts to lead an ordinary person to entertain a strong suspicion that weapons would be found in the car. Defendant was carrying a straight, fixed-blade knife on his belt. The knife was concealed by his shirt. When Officer Cogle patted defendant down and found the concealed knife, defendant said, "Shit. I forgot about that knife," suggesting there might be other knives in the vehicle.

Defendant also told Officer Cogle he had been on parole for assault with a deadly weapon. That information, together with the swastika on the dashboard and the tattoos on defendant's body, led Officer Cogle to believe that defendant might be part of a prison gang with white supremacy or skinhead affiliations. In Officer Cogle's experience, individuals who were part of those gangs were more likely to possess weapons. Under these circumstances, there was a fair probability that weapons would be found in defendant's car, and likely in the area in which he was furtively moving about--the driver's seat and the surrounding area.

Defendant argues his furtive movements were insufficient to constitute probable cause. He likens his actions to the defendant's in *People v. Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807 (*Kiefer*). There, the defendant was a passenger in a car that was pulled over for speeding. (*Id.* at p. 811.) The arresting officer testified that, as the car pulled over, he saw the defendant, a passenger in the car, raise her head up from the front passenger seat, turn and put her arm over the back seat, face forward again, bend down toward the floor, and then reassume a normal sitting position. (*Ibid.*) After talking with the driver who had gotten out of the car and walked toward him, the officer approached the passenger side of the car, where the defendant sat with the window rolled up. Making

5

no attempt to communicate with the defendant, the officer "immediately opened the car door next to her and looked inside," ultimately finding evidence leading to the discovery of the marijuana that was the subject of the suppression motion. (*Ibid.*) The trial court granted defendant's motion to suppress and the court of appeal affirmed. (*Id.* at p. 812.)

Our state's Supreme Court also affirmed. Stating the well settled law that, "as an incident to a lawful arrest, a warrantless search . . . may be made (1) for instrumentalities used to commit the crime, the fruits of that crime, and other evidence thereof which will aid in the apprehension or conviction of the criminal; (2) for articles the possession of which is itself unlawful, such as contraband or goods known to be stolen; and (3) for weapons which can be used to assault the arresting officer or to effect an escape," the court excluded each category. As to the first category, the court found that, where the offense of arrest was speeding, "the 'instrumentality' used to commit the offense . . . is, if anything, the automobile itself, [and] a search of any portion of its *interior* cannot be justified on this ground." As to the third category, the court found that, because "there are no 'fruits' of such an offense, . . . the 'evidence' thereof is not subject to search and seizure as it consists essentially of the arresting officer's own observations and records." (*Kiefer, supra*, 3 Cal.3d at pp. 812-813.) Finally, with respect to the second category, the court found that the circumstances justifying the arrest--a typical traffic violation--"do *not* also furnish probable cause to search the interior of the car" because an arresting officer in such a case "cannot reasonably expect to discover either instrumentalities or fruits or seizable evidence of the offense; still less does the arrest give him reasonable grounds to believe, without more, that the vehicle contains contraband." (*Id.* at p. 814.)

In discussing whether furtive gestures constitute probable cause to search, the Supreme Court stated that while furtive gestures alone are not sufficient, "*coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime,* they are proper factors to be considered." (*Kiefer, supra,* 3 Cal.3d at p. 818.) The court concluded that the defendant's furtive movements alone were insufficient to constitute

6

probable cause to search the car for contraband. (*Id.* at p. 828.) As for weapons, the court held that "a warrantless search for weapons, like a search for contraband, must be predicated in traffic violation cases on specific facts or circumstances giving the officer reasonable grounds to believe that such weapons are present in the vehicle he has stopped." (*Id.* at p. 829.) On that basis, the court concluded that the act by defendant of bending down, coupled with the driver's walking toward the officer's car, did not give the arresting officer reasonable grounds to believe that defendant was in possession of weapons. (*Ibid.*)

*Kiefer* is distinguishable. Here, unlike the events following the routine traffic stop in *Kiefer*, Officer Cogle pulled defendant over for various Vehicle Code violations but, after a pat-down search, arrested him for carrying a concealed weapon. The circumstances that justified defendant's arrest furnished Officer Cogle with probable cause to search the interior of the Camaro because, based on the concealed weapon in defendant's possession and the additional information known to Officer Cogle--that defendant admitted having been on parole for an assault with a deadly weapon conviction and that he had likely been affiliated with a white supremacist prison gang--he could reasonably expect to find weapons in the vehicle. (*Kiefer, supra*, 3 Cal.3d at p. 814.)

We find the search of the Camaro was supported by probable cause.

B.      *Inventory Search*

Defendant contends the inventory search was unlawful because the prosecution failed to prove the impound and search were conducted according to standardized procedures. Having found there was probable cause to search the Camaro, we need not reach this issue.

## II

### *Court Security Fee*

### *(Pen. Code, § 1465.8, subd. (a)(1))*

At the time of defendant's conviction on October 14, 2010, Penal Code section 1465.8, subdivision (a)(1) provided for a mandatory court security fee in the amount of $30 for every criminal conviction. The statute was amended, effective October 19, 2010, to increase the fee from $30 to $40 per conviction. (Stats. 2010, ch. 720, § 33.)

Defendant contends, and the People concede, that the $40 court security fee imposed by the trial court pursuant to Penal Code section 1465.8 was in excess of the $30 amount authorized by the statute at the time of defendant's conviction. (Cf. *People v. Davis* (2010) 185 Cal.App.4th 998, 1001.) We agree and shall modify the judgment accordingly.

## III

### *County Penalty Assessment*

### *(Gov. Code, § 76000, subd. (a)(1))*

The trial court imposed a $200 fine plus "various penalty assessments, surcharges, and fees [which] bring that to $760." According to the court's written minute order, the "various penalty assessments, surcharges, and fees" include a $200 state penalty assessment (Pen. Code, § 1464, subd. (a)), a $20 DNA penalty assessment (Gov. Code, § 76104.6), a $60 DNA penalty assessment (Gov. Code, § 76104.7), a $100 state court facilities construction fee (Gov. Code, § 70372), a $140 county penalty assessment (Gov. Code, § 76000, subd. (a)(1)), and a $40 state criminal fine surcharge (Pen. Code, § 1465.7, subd. (a)).

Defendant claims the $140 county penalty assessment imposed pursuant to Government Code section 76000, subdivision (a)(1), is excessive and should be reduced to $70.

Defendant failed to object to imposition of the penalty assessment at sentencing. Only those claims properly raised and preserved by the parties are reviewable on appeal. (*People v. Allen* (2001) 88 Cal.App.4th 986, 998, fn. 27; *People v. Scott* (1994) 9 Cal.4th 331, 354.) Defendant argues his claim is not forfeited because the "trial court exceeded its jurisdiction in imposing [the penalty assessment]," and because the issue of the amount of the penalty assessment is a pure question of law. As we shall explain, defendant forfeited his claim on appeal.

Government Code section 76000 provides, as follows: "Except as otherwise provided elsewhere in this section, in each county there shall be levied an additional penalty in the amount of seven dollars ($7) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses, including all offenses involving a violation of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code." (Gov. Code, § 76000, subd. (a)(1).) Subdivision (e) of that section provides as follows: "The seven-dollar ($7) additional penalty authorized by subdivision (a) shall be reduced in each county by the additional penalty amount assessed by the county for the local courthouse construction fund established by Section 76100 as of January 1, 1998, when the money in that fund is transferred to the state under Section 70402."

Defendant does not object to the imposition of a penalty assessment, only that the amount should have been reduced pursuant to the language of subdivision (e). Defendant urges that "[t]he amount listed for Shasta County is $3.50," and thus the $7 assessed for every $10 of every fine, penalty or forfeiture imposed should have been reduced to $3.50, resulting in a penalty assessment of $70 rather than the $140 imposed by the court. However, we are unable to determine from defendant's briefs or from the record whether Shasta County has established a local courthouse construction fund under Government Code section 76100, or whether Shasta County is participating in the Transitional State Court Facilities Construction Fund under former Government Code section 70401, and if

9

so, whether the money in that fund has been transferred to the state under Government Code section 70402. In any event, the trial court properly imposed a penalty assessment pursuant to Government Code section 76000, subdivision (a)(1). The fact that the amount imposed may or may not have been subject to reduction pursuant to subdivision (e) does not render the assessment unauthorized. As such, defendant's failure to raise the issue at trial forfeits his claim on appeal.

IV

*DNA Penalty Assessment*

(*Gov. Code, § 76104.7*)

Defendant also contends, and the People concede, that the $60 DNA penalty assessment imposed pursuant to Government Code section 76104.7 violates the prohibition against ex post facto application of laws and must be reduced to $20. We agree.

Under ex post facto principles, the amount of a fine is determined as of the date the offense was committed. (*People v. Saelee* (1995) 35 Cal.App.4th 27, 30.) At the time defendant committed the crime on April 13, 2010, Government Code section 76104.7 provided for a penalty assessment of "one dollar ($1) for every ten dollars ($10) or part of ten dollars ($10), . . . upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses . . . ." (Stats. 2007, ch 302, § 8, p. 3063, eff. Jan. 1, 2008.) The trial court imposed a DNA penalty assessment of $60 on a $200 fine. That penalty assessment must be reduced to $20 in accordance with the provisions of Government Code section 76104.7 as it existed when defendant committed the offense.

V

*Narcotics Registration Requirement*

(*Health & Saf. Code, § 11590*)

Defendant contends, and the People concede, that the narcotics registration requirement (Health & Saf. Code, § 11590) reflected on the abstract of judgment must be

10

stricken, as it was not included in the trial court's oral pronouncement of judgment, nor is a violation of former Penal Code section 12020 enumerated in the list of offenses contemplated by the registration statute. We agree.

While the narcotics registration requirement appears on the abstract, the trial court never orally ordered defendant to register. The oral pronouncement of judgment by the court is the judgment. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) The abstract of judgment summarizes and must accurately reflect the oral pronouncement of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *Mesa*, *supra*, 14 Cal.3d at p. 471; *People v. Zackery* (2007) 147 Cal.App.4th 380, 389.) The clerk of the court may not add to the judgment pronounced. (*Zackery*, at p. 389.) Where a discrepancy exists between the oral pronouncement of judgment and an abstract of judgment, the oral pronouncement controls. (*Zackery,* at p. 385.) Given that a violation of former Penal Code section 12020 was not among the list of offenses mandating registration under Health and Safety Code section 11590, the narcotics registration requirement must be stricken.

VI

*Conduct Credit*

(*Pen. Code, § 4019*)

Defendant contends the trial court violated his right to equal protection by denying him day-for-day conduct credit because the amendments to Penal Code section 4019 which bestow such credit on prisoners whose crimes were committed on or after October 1, 2011 (Pen. Code, § 4019, subds. (b), (c), & (i)) must be read retroactively. This claim was rejected by the California Supreme Court in a case decided after the conclusion of briefing. (*People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9 (*Lara*).)

In *Lara*, the Supreme Court explained its rejection of the defendant's equal protection argument as follows: "As we there [*People v. Brown* (2012) 54 Cal.4th 314, 328-330 (*Brown*)] explained, ' "[t]he obvious purpose" ' of a law increasing conduct credits ' "is to affect the behavior of inmates by providing them with incentives to engage

11

in productive work and maintain good conduct while they are in prison." [Citation.] "[T]his incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application." ' (*Brown*, at p. 329, quoting *In re Strick* (1983) 148 Cal.App.3d 906, 913.) Accordingly, prisoners who serve their pretrial detention before such a law's effective date, and those who serve their detention thereafter, are not similarly situated with respect to the law's purpose. (*Brown*, at pp. 328-329.)" (*Lara*, *supra*, 54 Cal.4th at p. 906, fn. 9.) Defendant is not entitled to additional presentence conduct credit.

### DISPOSITION

The court's denial of defendant's motion to suppress is affirmed. The court security fee imposed pursuant to Penal Code section 1465.8 is reduced to $30. The DNA penalty assessment imposed pursuant to Government Code section 76104.7 is reduced to $20. The Health and Safety Code section 11590 narcotics registration requirement is stricken. The matter is remanded to the trial court with directions to prepare an amended abstract of judgment reflecting these changes and to forward a certified copy thereof to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


                                     HULL            , Acting P. J.


We concur:


      BUTZ           , J.


      MURRAY        , J.