[Civ. No. 52520. First Dist., Div. Five. Aug. 3, 1984.]

JOSEPH C. BETCHART, Plaintiff and Appellant, v.
DEPARTMENT OF FISH AND GAME et al.,
Defendants and Respondents.

**COUNSEL**

Burch Fitzpatrick, Jefferson Frazier, Miller, Starr & Regalia and Dan Grimmer for Plaintiff and Appellant.

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, and Peter W. Van der Naillen, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**LOW, P. J.**—The state has the duty to preserve and protect wildlife. California State Department of Fish and Game (Fish and Game) agents may without warrants reasonably enter and patrol private open lands where game is present and hunting occurs to enforce Fish and Game laws. We affirm the declaratory relief judgment.

Plaintiff Joseph C. Betchart is part owner of agricultural range land, and he, his family and guests hunt for deer on the property during deer season. Defendant Richard Macedo and other Fish and Game agents (wardens) routinely patrol the property to enforce provisions of the Fish and Game Code, mostly during deer season, with knowledge that game is present and deer hunting occurs on the property. The wardens have no knowledge of any violation of regulations by plaintiff, his family or guests. The wardens do not have permission to enter the property and have been requested to immediately leave, but have refused to do so until completion of the patrol. Entries are made by way of roads crossing the property; on one occasion a warden on the property climbed over a locked gate to enter other parts of the property.

I.

██ California wildlife is publicly owned and is not held by owners of private land where wildlife is present. (Fish & G. Code, § 1801, subd. (f);[1] *Ex Parte Maier* (1894) 103 Cal. 476, 484 [37 P. 402].) It is this state's policy to conserve and maintain wildlife for citizens' use and enjoyment, for their intrinsic and ecological values, and for aesthetic, educational and nonappropriative uses. (§ 1801, subds. (a)(b)(c)(d).) It is also the policy to maintain recreational uses of wildlife, including hunting, "subject to regulations consistent with the maintenance of healthy, viable wildlife resources,

---

[1] All references are to the Fish and Game Code unless otherwise stated.

the public safety, and a quality outdoor experience." (§ 1801, subd. (e).) Wildlife is a renewable, publicly owned resource to be maintained through regulated management. (§ 1801, subd. (f).)

Wildlife may not be taken or possessed except as provided by the Fish and Game Code, and hunting is a highly regulated activity. Statutes and regulations specify hunting seasons, bag and possession limits, manner, place, means and hours of taking and possessing; special restrictions relate to animal type, sex, maturity, or other physical distinctions. (§ 3000 et seq.; Cal. Admin. Code, tit. 14, § 250 et seq.) Deer hunters must carry a deer license tag while hunting and upon the killing must fill out the tag, punch out the kill date, attach one part of the tag to the antlers or ear, have the tag countersigned by an authorized person before transporting the game and mail the other part of the tag to Fish and Game. (§§ 4336, 4341.) Deer hunters must also possess a hunting license. (§ 3007.)

## II.

It is undisputed that plaintiff's agricultural range land consists of "open fields." (Cf. *Hester* v. *United States* (1924) 265 U.S. 57.) ■ Therefore, under a Fourth Amendment analysis, in asking whether plaintiff "has a 'constitutionally protected reasonable expectation of privacy'" (*Oliver* v. *United States* (1984) 466 U.S. 170 [80 L.Ed.2d 214, 223; 104 S.Ct. 1735, 1740]) in his open fields, the answer is, no: "[A]n individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers." (At pp. ———— [80 L.Ed.2d 214, 225-226; 104 S.Ct. 1735, 1742].)

■ However, plaintiff bases his contention on the warrant requirement of article I, section 13 of the California Constitution,[2] which may on occasion afford "'a broader security against unreasonable searches and seizures than that required by the United States Supreme Court' [citation] . . . ." (*People* v. *Chavers* (1983) 33 Cal.3d 462, 467 [189 Cal.Rptr. 169, 658 P.2d 96].) ■ Under California law, a claim of illegal warrantless search is measured by a balancing test: "whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion [citation]." (*People* v. *Bradley* (1969) 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129].) The *Bradley* court stated that this test applies in cases involving "searches in

---

[2]California Constitution, article I, section 13, states: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

open fields." (*Ibid.*) ■ ■■■ Even under California standards, the warrantless entries by Fish and Game wardens onto plaintiff's property are permissible.[3]

■ Plaintiff argues that because he has locked gates restricting access to parts of his property, and because he has requested that wardens who were present on the property apart from the roadways leave, he has "vehemently expressed his desire to exclude government agents from those portions of his property hidden from public view . . .," and he therefore has an expectation of privacy in the nonpublic parts of the land. However, the fact that plaintiff has expressed his demand for privacy does not mean that his expectation is reasonable; the "test of reasonableness is dependent upon the totality of facts and circumstances involved in the context of each case. [Citation.]" (*People* v. *Lovelace* (1981) 116 Cal.App.3d 541, 548 [172 Cal.Rptr. 65].)

Plaintiff is protected against *unreasonable* governmental intrusion. Plaintiff submits that the wardens' warrantless entries onto his property are unreasonable because they are "administrative" patrols, for which an administrative search warrant is required under Code of Civil Procedure section 1822.50 et seq. He primarily relies on two cases: *Vidaurri* v. *Superior Court* (1970) 13 Cal.App.3d 550 [91 Cal.Rptr. 704] and *Salwasser Manufacturing Co.* v. *Municipal Court* (1979) 94 Cal.App.3d 223 [156 Cal.Rptr. 292].

*Vidaurri's* holding that a health inspector from the California Agriculture Department may not enter an enclosed backyard absent a warrant or the owner's consent (*Vidaurri* v. *Superior Court, supra,* 13 Cal.App.3d at pp. 552-553) is not applicable. *Vidaurri* did not consider whether the inspection would require a warrant if conducted in open fields. Further, Code of Civil Procedure sections 1822.50 through 1822.56 specifically name

---

[3]California Constitution, article I, section 1 (section adopted Nov. 5, 1974), states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

This California constitutional right of privacy "[i]n the search and seizure context . . . has never been held to establish a broader protection than that provided by the Fourth Amendment of the United States Constitution or article I, section 13 of the California Constitution." (*People* v. *Crowson* (1983) 33 Cal.3d 623, 629 [190 Cal.Rptr. 165, 660 P.2d 389].) The principal objective of this section is to prevent " 'government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarass [sic] us.' " (*White* v. *Davis* (1975) 13 Cal.3d 757, 774 [120 Cal.Rptr. 94, 533 P.2d 222].)

"health . . . officer" as subject to the inspection warrant requirement. (*Id.*, at p. 553.) Fish and Game wardens are not so named in the inspection warrant statutes.

*Salwasser Manufacturing Co.* states that "[u]nless some recognized exception to the warrant requirement applies (e.g., for a 'closely regulated' business such as the sale of liquor or firearms) an administrative search or inspection must be conducted pursuant to a warrant." (*Salwasser Manufacturing Co.* v. *Municipal Court, supra,* 94 Cal.App.3d at p. 229.) The exception referred to in *Salwasser Manufacturing Co.* was detailed in *United States* v. *Biswell* (1972) 406 U.S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593] (warrantless search of firearms dealer during business hours authorized by the Gun Control Act of 1968 not violative of Fourth Amendment). (See also *Colonnade Corp.* v. *United States* (1970) 397 U.S. 72 [25 L.Ed.2d 60, 90 S.Ct. 774] [liquor licensee may not refuse warrantless entry by federal inspector].) Plaintiff's contention that the *Biswell* exception is inapplicable here because it only relates to highly regulated businesses is too narrow and thus his claim lacks merit. In *People* v. *Firstenberg* (1979) 92 Cal.App.3d 570 [155 Cal.Rptr. 80], the court noted that the *Biswell* exception to the inspection warrant requirement was based on several factors: (1) a "deep-rooted history of regulation;" (2) "to be effective, inspections to secure compliance with licensing regulations had to be frequent and unannounced;" and (3) "[w]hen a dealer chooses to engage in this pervasively regulated business and to accept a federal license," he does so with knowledge of being "subject to effective inspection." (*Id.*, at p. 578.) The fact that *Biswell* dealt with a business is not the sole factor to be considered.

### III.

California's pervasive scheme of regulating wild game hunting would be a futile pursuit without frequent and unannounced patrols. Certain types of illegal hunting activity must be viewed on the scene; e.g., using lights or infrared sniperscopes (§ 2005), hunting at night (§ 3000), hunting while intoxicated (§ 3001), shooting from a vehicle (§ 3002), herding with a vehicle (§ 3003.5), using a net, trap or poison (§ 3005), or using dogs in hunting deer (Cal. Admin. Code, tit. 14, § 265). Also, wild game, when reduced to possession, can easily be altered as to form and identity, concealed and moved. Of practical necessity, wardens must have the power to reasonably enter open private lands to enforce game regulations. ■ " '[G]overnmental officials may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as *may fairly be implied* from the statute granting the powers.' [Citation.]" (*In re Cathey* (1961) 55 Cal.2d 679, 689 [12 Cal.Rptr. 762, 361 P.2d 426].)

 Procedural requirements for issuance of administrative inspection warrants are not compatible with enforcement of hunting regulations. Wardens would be required to locate and attempt to seek each landowner's consent prior to securing a warrant (or justify the failure to do so). (Code Civ. Proc., § 1822.51.) If consent were refused, at least 24 hours notice would be required prior to execution of the warrant unless a judge found that immediate execution was reasonably necessary under the circumstances. (Code Civ. Proc., § 1822.56.) In dealing with enforcement of game regulations, this process is impractical and cannot be intended to apply to in-the-field checks by wardens.

Hunters are required to be licensed. By choosing to engage in this highly regulated activity, there is a fundamental premise that there is an implied consent to effective supervision and inspection as directed by statute.

Wild game hunting is not a commercial enterprise (as are the liquor and firearms industries). Nevertheless, hunting takes place in "open fields" whether publicly or privately owned; this is a convincing factor that plaintiff's expectation of privacy while hunting is unreasonable. Open field sites are regarded as so public in nature that searches are justifiable without any particular showing of cause or exigency. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 882 & fn. 10 [109 Cal.Rptr. 304, 512 P.2d 1208].) "This hierarchy of protection arises not from the application of differing constitutional standards to various locales, but rather from an application of a single standard of reasonableness to all places in accordance with a fundamental understanding that a particular intrusion into one domain of human existence [such as the home] seriously threatens personal security, while the same intrusion into another domain does not." (*Id.,* at pp. 882-883; see also *Joseph* v. *Masonite Corp.* (1983) 148 Cal.App.3d 6, 11-12 [195 Cal.Rptr. 629].)

The entries by the wardens are for the purpose of regulating and managing a state-owned resource. Thus, the circumstances are even more compelling than the warrantless inspections of privately owned assets authorized in the *Biswell* line of authority. The Legislature has given Fish and Game supervision over property belonging to the sovereign. The warrantless entries by authorized fish and game personnel onto open fields constitute only a minimal intrusion into the private use of the property. Such entries are permitted where game is present and hunting occurs. The inspections may not exceed the specific limited purpose of enforcing wild game regulations, absent probable cause.

The judgment is affirmed.

King, J., and Haning, J., concurred.