91 F.3d 145
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Keith THOMPSON, Defendant-Appellant.
 No. 95-5881.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1996.
 
 Before: MERRITT, Chief Circuit Judge; MILBURN, Circuit Judge; and O'MALLEY, District Judge*
 MERRITT, Chief Judge.
 
 
 1
 Defendant Keith Thompson was charged with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and filed a motion to suppress the cocaine found in his car and statements he made following his arrest. The motion to suppress was denied and Defendant appealed.
 
 I.
 
 2
 The facts related herein are those found by the Magistrate Judge after an evidentiary hearing. The parties are not in dispute as to the basic facts at issue here.
 
 
 3
 The Shelby County, Tennessee, Sheriff's Office received information from a confidential informant that drugs were being sold by a particular individual from a certain address in Memphis, Tennessee. The informant gave a description of the person and the address and, based on this information, a search warrant issued. The warrant directed a search of "(a) a residence more commonly known as 2577 Dakar, all automobiles and outbuildings located on said premises to be included...." Defendant has not challenged the validity of the warrant.
 
 
 4
 When officers arrived at the residence to execute the warrant, five males, including Defendant Keith Thompson, were in the yard. An automobile was parked in the driveway of the residence, about five to ten feet from the house. The men were trying to figure out how to get into the car because the keys had been locked inside the vehicle. According to the police, one of the males, ultimately determined to be Defendant Thompson, matched the description of the person selling drugs given to the police by the informant. The police drew their weapons, ordered all the men to lie face down on the ground and handcuffed them. The officers did not ask if any of the persons present owned or lived in the house. The officers then proceeded to search the house. Approximately $1500 was found during the search but no drugs.
 
 
 5
 After searching the house, the officers stated that they wished to search the car in the driveway. The officers did not attempt at this point to ascertain the owner of the car, but did ask where the keys to the car were. Defendant told the officers that the keys were locked in the car. The officers used a coat hanger to open the car. A drug-sniffing dog was put in the car and alerted officers to the door panel. The panel was removed and officers could see a clear plastic bag. At this point, Defendant Thompson, who was cuffed and lying nearby on the ground, tried to run away. He was apprehended.
 
 
 6
 Before the drugs were removed, the officers asked who owned the car and Defendant Thompson answered that it was his. An automobile registration check done on the scene confirmed ownership. The bag was removed and found to contain 33 grams of cocaine base. Defendant and one other person were arrested and advised of their Miranda rights. Defendant was taken to the Shelby County Jail where he remained for one and one-half days; he was then transferred to a combined federal/state facility and was questioned by a federal officer after again receiving Miranda warnings. Defendant gave a statement admitting that the crack found in the car was his and that he sold crack.
 
 
 7
 Defendant filed a motion to suppress the cocaine, his statement to police at the scene that the car was his and his later statement to the federal officer that the crack was his and that he was a drug dealer. The grounds for the motion were (1) Defendant was a visitor to the residence identified in the warrant so his car should not have been searched; (2) Defendant was improperly detained during execution of the warrant; (3) Defendant was interrogated in a custodial situation at the scene about ownership of the car without having received a Miranda warning and (4) Defendant's later statements were tainted by the earlier statement given at the scene about ownership of the car.
 
 
 8
 An evidentiary hearing was held before Magistrate Judge James Allen. Defendant testified that he did not live at 2577 Dakar but instead lived nearby with his girlfriend. Defendant testified that his father owns the residence searched, but Defendant is free to visit when he likes and does so once or twice per week.
 
 
 9
 The Motion to Suppress was denied. The Magistrate Judge held (1) that the search warrant implicitly authorized the officers to detain persons found on the premises for the duration of the search; (2) that the search warrant authorized by its terms the search of automobiles found on the premises, although it later turned out that the automobile did not belong to anyone living on the premises; (3) that the officers' question concerning ownership of the car was routine biographical questioning not meant to elicit incriminating information, (4) in any event, the questioning was not custodial in nature and (5) the questioning by the federal officer that elicited incriminating statements was not tainted by the earlier events. Magistrate Report and Recommendation at J.A. 30-32. Defendant filed objections to the Magistrate Judge's Report and Recommendation. J.A. at 25. The District Court adopted the Report and Recommendation of the Magistrate Judge in full. J.A. at 53.
 
 
 10
 Defendant entered a guilty plea conditioned on ability to appeal the denial of the Motion to Suppress. This appeal followed.
 
 II.
 A.
 Search of Defendant's Automobile
 
 11
 Defendant argues that the scope of the search warrant did not authorize the police to search his car because he was a visitor to the premises and the car was not owned by the owner of the premises to be searched. Although the Supreme Court apparently has not addressed this issue directly, a majority of the courts that have addressed the issue have upheld the search of a car on the premises, even where the search of vehicles was not expressly included in the wording of the warrant, regardless of whether it was owned or controlled by the owner of the premises searched. See, e.g., United States v. Gottschalk, 915 F.2d 1459, 1461 (10th Cir.1990); United States v. Cole, 628 F.2d 897 (5th Cir.1980) (upholding the search of a truck belonging to a third party who arrived at the searched residence during execution of the warrant), cert. denied, 450 U.S. 1043 (1981).
 
 
 12
 In a case somewhat analogous to the situation here, the Sixth Circuit stated that where officers act reasonably and in a way that is authorized by a valid warrant, the search will be upheld. In United States v. Combs, 468 F.2d 1390, 1392 (6th Cir.1972), cert. denied, 411 U.S. 948 (1973), the warrant authorized a search of "the premises," including "all outbuildings and vehicles thereon, including all adjacent properties used by the said Pearl Combs [defendant's father]." The officers in Combs searched a car belonging to defendant that was parked near the house in an area where the family generally parked their cars assuming that the car belonged to Pearl Combs. Contraband was found in the car. In fact, the car was parked on the lot next door to Pearl Combs and belonged to defendant, Pearl Combs' son, who moved to suppress the evidence. This Court held that because the car was located within the curtilage of the house and reasonably appeared to belong to the owner of the premises searched, the search was legal. Id.
 
 
 13
 We find that the officers in the instant case acted reasonably in assuming the vehicle to be within the scope of the warrant due to its location on the premises to be searched. The search warrant here specifically included in its scope any vehicles present on the premises. It did not limit the search only to vehicles belonging to the owner of the residence to be searched. Under the circumstances, it appears that the search of the car was reasonable.
 
 B.
 Detention of Defendant During Search
 
 14
 There is no doubt that the detention of a person during a search where he is handcuffed and forced to lie face down, as occurred here, constitutes a "seizure" under the Fourth Amendment. The question is whether under the circumstances the seizure was "reasonable." A limited seizure while officers execute a search warrant may be reasonable and has been recognized as an exception to the need for probable cause before detaining a person. Michigan v. Summers, 452 U.S. 692, 694, 700-05 (1981). In Summers, the Supreme Court found that "a warrant to search for contraband founded on probable cause carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id.
 
 
 15
 Following Summers, the Sixth Circuit, in United States v. Fountain, 2 F.3d 656 (6th Cir.), cert. denied, 114 S.Ct. 608 (1993), found that restraining occupants, even nonresidents, with handcuffs and at gunpoint, during a search for drugs executed pursuant to a warrant was not unreasonable under the Fourth Amendment. In Fountain, a panel of this Court held that when police obtain a warrant to search a home they "may detain persons found on the premises during the search, and they make take such reasonable action as is necessary to protect themselves during the execution of the warrant." Id. at 663-64.
 
 
 16
 Under Fountain, the seizure of Defendant was reasonable under the circumstances. Defendant makes much of the fact that he was not a resident of the house and that the officers did not even make an attempt to ascertain who lived at the residence. This argument is a red herring. Under the wording on the warrant executed in this case, it is irrelevant who actually resided at the house. The warrant was issued for a particular property and included a description of a particular person, but the warrant did not specify that the person described owned the house.
 
 
 17
 Furthermore, the police were not unreasonable in restraining the persons they found on the property during the search in order to protect the officers' safety. The search was for drugs, which may be associated with guns, there were five persons at the property when police arrived and there was reason to believe that the persons on the property might flee if not restrained and, in fact, Defendant did attempt to flee the scene. Detaining defendant with handcuffs for the duration of the search, even though he was not a resident of the house searched, was not unreasonable and did not violate his Fourth Amendment rights.
 
 C.
 Defendant's Statements to Police
 
 18
 Defendant contends that his statement made at the scene that he owned the car should be suppressed. Specifically, Defendant asserts that the police conducted a custodial interrogation without advising him of his Miranda rights when they questioned him about the ownership of the car while he lay face down with his hands cuffed behind his back. The District Court held that any statements need not be suppressed because the police query was for "routine biographical information" and the detention was not "custodial in nature." The finding by the District Court that Defendant was not "in custody" for purposes of giving Miranda warnings is clearly erroneous. Because the information obtained in violation of Defendant's Fifth Amendment rights was cumulative of other evidence, however, we hold the error harmless.
 
 
 19
 Miranda warnings are required where there is an arrest or a restraint on freedom of movement to the degree associated with a formal arrest. United States v. Sangineto-Miranda, 859 F.2d 1501, 1515 (6th Cir.1988). This is a fact-specific inquiry. Defendant here was handcuffed, face down in the yard with officers pointing guns at him. It would not appear to Defendant, or to anyone else, that he was free to go. Defendant here was clearly "in custody" even if not formally under arrest. Under the circumstances, therefore, the Defendant should have been read his Miranda rights before being questioned about the car.
 
 
 20
 A determination as to whether Defendant was in custody does not end the inquiry, however, and is not dispositive to the issue here. To determine if the statement about the car's ownership should be suppressed, it must be determined if the question put to Defendant by the police constituted an "interrogation."
 
 
 21
 The Supreme Court has stated that interrogation is "any words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). The Court went on to state that whether police conduct constituted interrogation turned on a defendant's perception of the police conduct and, as measured from the police perspective, the reasonable likelihood that such conduct would illicit an inculpatory response. Id. & n. 7; see also United States v. Soto, 953 F.2d 263, 264-65 (6th Cir.1992); United States v. Avery, 717 F.2d 1020, 1024-25 (6th Cir.1983) (scrutinizing particular factual setting to conclude no interrogation), cert. denied, 466 U.S. 905 (1984).
 
 
 22
 The government contends that because the police had not yet "recovered" the cocaine when they asked who owned the car, they were not attempting to "elicit an incriminating response." However, the drug-sniffing dog had already indicated the presence of drugs in the car, the door panel had been removed and the officers could see a clear plastic bag within. While it may be true that the police did not have the cocaine in their possession, they undoubtedly were almost 100% certain at this point that they had found drugs.
 
 
 23
 The government also argues that Defendant Thompson was not in custody because he had not been arrested yet. However, as described above, Defendant was handcuffed face down on the ground, probably could not leave even if he asked to do so at that point and likely believed that he was compelled to answer the question given the circumstances.
 
 
 24
 The government further argues that the question was "routine biographical questioning" and "no more personal or incriminating than asking for defendant's telephone number...." Government brief at 13. Given that the police knew they had found a large quantity of drugs, asking the question at that point seems more incriminating than asking for phone numbers. It is unclear from the record whether Defendant knew that the police had actually located the drugs when they asked the assembled group who owned the car. Under the circumstances, Defendant was subjected to a "custodial interrogation" and was entitled to be advised of his Miranda rights.
 
 
 25
 Despite the erroneous finding, the error concerning the questioning of Defendant about the car's ownership is not reversible error. The police executing the warrant ran a registration check on the car on the premises and determined that its owner was Defendant. The statement by Defendant that he owned the car was therefore information that the police discovered soon in any event and under the cumulative evidence rule it should not be suppressed. United States v. Mahar, 801 F.2d 1477, 1501 (6th Cir.1986). Because Defendant does not dispute the fact of his ownership of the car containing the contraband, his guilty plea is supported by substantial evidence and is not affected by our finding of error regarding the questioning.
 
 
 26
 As to the statement given by Defendant 36 hours after his arrest that the cocaine found in the car belonged to him and that he was a crack dealer, it does not appear that the earlier events at the scene tainted the statement. Defendant had been advised of his Miranda rights and the event was far enough removed in time from the arrest that any taint was removed. Wong Sun v. United States, 371 U.S. 471 (1963).
 
 
 27
 For the foregoing reasons, the opinion of the District Court is affirmed.
 
 
 
 *
 The Honorable Kathleen M. O'Malley, District Judge, United States District Court for the Northern District of Ohio, sitting by designation