Filed 11/5/15  P. v. Chavez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B260247 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA411679) |
| v. | |
| ADAN CHAVEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig Richman, Judge.  Reversed and remanded with directions.

Jeffrey J. Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Adan Chavez appeals from the judgment entered following his negotiated plea of no contest to possession of cocaine for sale (Health & Saf. Code, § 11351), following the denial of his suppression motion (Pen. Code, § 1538.5).  The court suspended imposition of sentence and placed appellant on formal probation for three years.  We reverse the judgment and remand with directions.

## ISSUE

Appellant contends that the search warrant in this case did not authorize the search of a vehicle not on the premises and that the good faith exception to the exclusionary rule does not apply.

## DISCUSSION

*The Court Erroneously Concluded that the Search of the Tahoe Was Supported by the Warrant and, Alternatively, that the Good Faith Exclusionary Rule Exception Applied.*

1.  *Pertinent Facts.*

    a.  *The Search Warrant and Affidavit.*

On May 22, 2013, a magistrate issued a search warrant supported by the affidavit of Los Angeles Police Officer Ismael Gonzales.[1]  The warrant and affidavit (hereafter, warrant) reflect as follows.  The warrant commanded the search of, in pertinent part, (1) the "location" (capitalization omitted) of 5608 Marmion Way (hereafter, Marmion address) in Los Angeles, and (2) vehicles on the premises.  The location was a single-family residence surrounded by a fence.  A driveway proceeded northbound on the property and to the rear of the residence.  The warrant commanded the search of various areas at the location, including "the surrounding grounds and any garages."  The warrant commanded a search for, inter alia, evidence of methamphetamine.

---

[1]  A detailed recitation of the facts of the present offense is unnecessary.  It is sufficient to note that on May 22, 2013, Los Angeles police officers executed a search warrant and found appellant possessed cocaine for sale in his Chevrolet Tahoe in Los Angeles County.  "Gonzales" is the officer's last name as he spelled it during the suppression evidentiary hearing and we use that spelling throughout this opinion.

2

As to vehicles, affiant Gonzales stated, "I am requesting permission to search any vehicles *on the premises*, under the control of any resident to [*sic*] the narcotic activity at 5608 Marmion Way. To include gold Ford Crown Victoria, bearing California License plate 6FZV855." (Italics added; hereafter, the vehicle search language.)

The warrant also indicated as follows. On May 14, 2013, police began monitoring the Marmion address for narcotics activity. About 3:45 p.m., Gonzales saw Ismael Lizama drive the Crown Victoria out of his driveway and engage in countersurveillance driving. Gonzales lost sight of the car. Gonzales drove to a bar at 6316 York to monitor it. About 4:20 p.m., Gonzales saw a man exit the bar, and the man and the male driver of a light-colored vehicle eventually engaged in what Gonzales believed was a narcotics transaction. The vehicle, which drove away, was about the same length and color as the Crown Victoria. Gonzales contacted the man and determined he possessed a baggy of cocaine. Gonzales opined Lizama, residing at the Marmion address, was dealing narcotics and the address was a storage location. (The warrant authorized the search of Lizama.)

b. *Suppression Hearing Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597 (*Leyba*)), the evidence at the November 12, 2014 hearing on appellant's pretrial Penal Code section 1538.5 suppression motion established as follows. On May 22, 2013, Gonzales had the warrant and, with other officers, was monitoring the Marmion address. Gonzales testified an Officer Mota told Gonzales the following. About 3:15 p.m., Mota saw appellant arrive driving a white Chevrolet Tahoe containing "Mr. Deli" (hereafter, Deli), Constani (or "Mr. Constantine"; hereafter, Constantine), and three children. (The record suggests Deli and Constantine may have been the same person.) The Tahoe parked on the street in front of the house at the address and Deli,

who had a canvas bag, escorted the children out of the Tahoe and into the property.[2] Deli never entered the property but assisted the children.

Appellant did not exit the Tahoe. Deli returned, reentered the Tahoe, and appellant drove it northbound on Marmion Way, then eastbound on Avenue 57 and into a commercial parking lot directly behind Marmion Way. The parking lot was two properties to the rear of the Marmion address. Appellant parked the Tahoe in the parking lot and appellant and Deli exited the Tahoe, walked to the Marmion address, and entered its front gate. Deli had walked westbound on Avenue 56, then northbound on Marmion Way, to get to the residence.[3]

Gonzales began to approach the Marmion address to execute the warrant. Mota saw appellant exit the property and walk southbound on Marmion Way, towards Avenue 56. Appellant looked up and down the street, then returned to the Marmion address. Gonzales and appellant met, and appellant quickly entered the gate. Gonzales told appellant that Gonzales had a warrant and asked appellant to open the gate. Appellant refused and asked to see the warrant. Constantine opened the gate. Police detained appellant and at some point found $424 on him.

Police executed the warrant and, inside doghouses located towards the rear of the property, found 26 baggies of a substance resembling methamphetamine, seven baggies of a substance resembling cocaine, and a bindle containing what resembled cocaine. Police also found $2,221 inside the house, plus plastic baggies which could be used for

---

[2]     On May 15, 2013 or May 16, 2013, Gonzales saw the Tahoe parked in front of the house and blocking the street. Gonzales determined on May 15, 2013, the Tahoe was registered to Romia Lizama at the Marmion address. Gonzales obtained appellant's name by investigating the address.

[3]     At some point an undercover officer made a phone call to the house, spoke to Lizama, and asked for $50 worth of narcotics. Lizama indicated he had the narcotics and asked the officer to meet at Avenue 57 and Marmion Way. Minutes later, Gonzales saw Lizama exit the house and walk southbound on Marmion Way, then eastbound on Avenue 56. Police approached Lizama and he discarded a tin foil packet containing what resembled methamphetamine. Police detained him.

4

packaging. A little marijuana was in the attic and a very strong odor of marijuana emanated from the attic. The attic contained a Los Angeles Superior Court document in appellant's name. Gonzales was one of the officers who entered the house and participated in the search.

Police searched the canvas bag Deli had possessed and found inside about $1,600 and a container inside of which was about 45 gross grams of marijuana. Deli had $57 on him. The canvas bag was on a table inside the property fence but not inside the house. The Crown Victoria was in the driveway and there was space there for another car.

Gonzales obtained the keys to the Tahoe from appellant's pants pocket. The Tahoe was parked in the previously mentioned parking lot. Gonzales went to search the Tahoe after appellant was arrested for the narcotics found in the house. Gonzales and another officer walked southbound on Marmion Way, then eastbound on Avenue 56 to get to the parking lot. The entrance to the parking lot was about halfway down the street. The parking lot was a city-owned public parking lot and it was daytime. A person walking from the house, down Marmion Way to Avenue 56, and then past three lots to the parking lot, would travel perhaps 100 feet. Gonzales testified, "[t]hat's approximate. I don't know." After Gonzales reviewed a map depicting the distance, he testified it was "probably a little bit more" than 100 feet.[4]

As Gonzales and the other officer approached the Tahoe, they smelled a strong odor of marijuana emanating from the Tahoe. Because of Lizama's activity, the previously recovered narcotics, and officer safety reasons, Gonzales moved the Tahoe to the front of the Marmion address.[5]

---

[4]     A defense investigator testified a person walking southbound on Marmion Way from the Marmion address, then east on Avenue 56 to the parking lot, would travel about 408 feet.

[5]     Marmion Way was a two-way street divided by train tracks. The northbound lane (the lane in front of the Marmion address) was about 14 feet wide. When Gonzales moved the Tahoe to the front of the house, the Tahoe took up the whole lane and cars could not pass.

The police searched the Tahoe in front of the house. Gonzales testified that in searching the vehicle, he was relying on the warrant. In the Tahoe's center console, police found a plastic bag containing a substance resembling cocaine. They also found 42 baggies and a traffic ticket that was in appellant's name at the Marmion address.

At the suppression hearing, the defense questioned Gonzales's stated reason for searching the Tahoe. Gonzales agreed the arrest report did not reflect the Tahoe was moved to the front of the house. And, Gonzales agreed the arrest report noted that, based on the information that the suspect had a suspended license,[6] officers approached the Tahoe and immediately smelled a strong odor of marijuana. Gonzales further agreed the report stated officers entered the vehicle pending an impound investigation as well as to confirm if marijuana was inside the vehicle. Gonzales agreed with defense counsel that the location of the Tahoe initially was not on the premises of the Marmion address location.

c. *Suppression Proceedings.*

Appellant filed a pretrial Penal Code section 1538.5 suppression motion on the ground, inter alia, the warrant did not authorize the search of the Tahoe.[7] At the November 12, 2014 hearing on the motion, the court indicated the subject cocaine of the present offense was the cocaine recovered from the Tahoe. Appellant conceded he resided at the Marmion address specified in the warrant. The court subsequently conducted the evidentiary hearing.

---

[6]     Gonzales later testified the search of the Tahoe had nothing to do with the suspended license.

[7]     The prosecutor acknowledged, inter alia, "[a] literal interpretation [of the vehicle search language] would be that the vehicle has to actually be [parked] . . . on the premises. It's not actually parked on the premises but went on the premises or near the premises and it's parked outside the premises. But, in essence, it's close to the premises." The prosecutor argued the Tahoe was used in narcotics and police who later searched the Tahoe found cocaine. The court commented, "Isn't that kind of boot-strapping, though? That's the ends justify the means."

6

Following the later presentation of evidence at the hearing, the prosecutor argued Gonzales lawfully searched the Tahoe pursuant to the warrant because the parking lot where the Tahoe had been parked was "an extension of the premises." The prosecutor also argued Gonzales lawfully searched the Tahoe pursuant to the automobile exception to the warrant requirement.[8] Appellant argued neither the warrant nor the automobile exception justified the search of the Tahoe.

Following argument, the court indicated there were only two possible justifications for the search: the warrant or the automobile exception. The prosecutor agreed. The court also indicated the geography of the situation was relatively unique and precluded residential parking on the street in front of the house, although the court acknowledged it had been possible to park in the driveway. The court then discussed the warrant and whether the Tahoe was "*sufficiently connected* to [this] residence, *albeit not parked on the premises*." (Italics added.) The court stated the warrant could have been written better "but I am holding that [appellant's] vehicle is sufficiently connected with this residence by virtue of the fact that it is registered to the residence, was known by the officers to be registered to the residence, [and] had been seen at the residence during the course of surveillance." The court also stated, "I do believe the vehicle is sufficiently connected with this location that the search warrant . . . included the [Tahoe] -- and I'm holding that it did."

The court concluded in the alternative that the good faith exception to the exclusionary rule applied. The court again noted the "geographic layout of [the] particular area" but expressed uncertainty as to why the Tahoe had not been parked in the driveway. The court concluded the officers believed the warrant included vehicles

---

[8]    The court suggested it agreed with the prosecutor's argument that there was probable cause to search the Tahoe based on "the smell of the marijuana," the fact appellant was seen driving the Tahoe and going to a location where drugs were found, and the fact "Constantine is transporting marijuana out of the car." The court stated, "[a]nd then also the attic, there is the marijuana found in the attic with [appellant's] name and the smell of the marijuana coming out of [the] car." The court then stated, "[c]oupled with that," Gonzales could "develop [probable cause]."

"connected to the property" and the court concluded the Tahoe was "clearly connected to the property and was in reasonably close proximity to the property."[9] The court denied appellant's suppression motion.

2. *Analysis.*

Appellant contends the warrant did not authorize the search of the Tahoe " 'not 'on the premises.' " (Capitalization omitted.) We agree. *People v. Dumas* (1973) 9 Cal.3d 871 (*Dumas*), cited by appellant, is illuminating. In *Dumas*, a search warrant authorized the search of the defendant's apartment, including storage areas used by apartment occupants. Police searching the apartment found evidence a car was registered in the defendant's name. Police found the car parked in the street two lots (about 100 feet) away from the apartment building. Relying on the warrant, police searched the car and found contraband. (*Id.* at p. 875.) The defendant contended the warrant did not support the search of the car. (*Id.* at p. 879.) Our Supreme Court agreed. (*Id.* at p. 881.)

*Dumas* observed, "The warrant obtained by the police officers in this case does not support their search of defendant's automobile. The constitutional requirement [of the Fourth Amendment] that a warrant 'particularly [describe] the place to be searched' compels the conclusion that the privilege to search created by a warrant *does not extend beyond* the place or places described *therein*. Thus in *Skelton v. Superior Court* (1969) *supra*, 1 Cal.3d 144, 155, we stated that '[we] are mindful of the general rule that when a search is made pursuant to a warrant, the *search* and seizure are *limited by the terms of the warrant*. Thus only the premises *described in the warrant* may be searched . . . .' " (*Dumas, supra,* 9 Cal.3d at p. 880, italics added.)

*Dumas* continued, "Defendant's automobile was not specifically mentioned in the warrant nor was it found in any of the places that were specifically mentioned. The People contend that the language of the warrant reading 'storage areas . . . used by occupants of the aforesaid apartment' is sufficiently broad to include defendant's

---

[9] The court rejected appellant's argument police moved the Tahoe for the sole purpose of connecting it to the property so the warrant would apply.

8

automobile.  While an ordinary passenger automobile conceivably can be used as a receptacle for the storage of various articles it is hardly a storage area of an apartment *within the ordinary meaning of that phrase*, and it is highly doubtful that *the magistrate issuing the warrant intended* to extend its scope beyond sites . . . that the expression storage area of an apartment *normally encompasses*.  [Fn. omitted.]  The description in a search warrant must be *sufficiently definite* that the officer conducting the search 'can with reasonable effort ascertain and identify the place intended.'  [Citation.]  *Nothing should be left to the discretion of the officer*.  [Citation.]  The broad interpretation that the People urge would violate these principles by allowing police officers excessive latitude to determine the scope of any warrant containing language which only they suggest is ambiguous concerning the place to be searched.  [Fn. omitted.]"[10]  (*Dumas, supra,* 9 Cal.3d at pp. 880-881, italics added.)

*Dumas* stated, "[w]hile it is not necessary that a search warrant state the name of the owner or a correct license number of the automobile to be searched [citations], we conclude that a warrant supporting the search of a motor vehicle must, at the very least,

---

[10] The omitted footnote stated, "This determination is not in conflict with decisions holding that a warrant to search 'premises' located at a particular address is sufficient to support the search of outbuildings and appurtenances in addition to a main building when the various places searched *are part of a single integral unit*.  (E.g., *People v. Fitzwater* (1968) 260 Cal.App.2d 478 [67 Cal.Rptr. 190] (search of dismantled van used as shed on warehouse lot); *People v. Grossman* (1971) 19 Cal.App.3d 8 [96 Cal.Rptr. 437] (search of carport appurtenant to apartment); *United States v. Long* (8th Cir. 1971) 449 F.2d 288, 294 (search of trash barrel located outside building); *Fine v. United States* (6th Cir. 1953) 207 F.2d 324, cert. den. (1954) 346 U.S. 923 [98 L.Ed. 417, 74 S.Ct. 310] (search of shed located some 20 feet behind main house); compare *United States v. Thomas* (N.D. Cal. 1963) 216 F. Supp. 942 (search of building some 500 feet from structure named in warrant, which could only be reached by a different road and was separated by gardens, fence, parking area and reservoir, held invalid).)  See also *United States v. Combs* (6th Cir. 1972) 468 F.2d 1390 [*Combs*], in which the warrant referred to 'the premises' including ' "all outbuildings *and vehicles thereon*, including any and all *adjacent properties used by the said Pearl Combs*." '  (Italics added.)  The court upheld a search of an automobile parked about 20 feet from the Combs house, where the Combs family generally parked their cars, but apparently not *on* property actually belonging to Pearl Combs."  (*Dumas, supra,* 9 Cal.3d at p. 881, fn. 5, first, third and fourth italics added.)

9

include some explicit description of a particular vehicle or of a place where a vehicle *is later found*. [Citation.] Inasmuch as the warrant in the present case described neither the vehicle *nor the site of the vehicle*, it cannot serve to validate the search." (*Dumas, supra,* 9 Cal.3d at p. 881, italics added.)

The vehicle search language in the warrant in the present case contained the phrase, "search any vehicles *on the premises*, under the control of any resident." (Italics added.) The prepositional phrase "on the premises" modified the immediately preceding noun "vehicles." (See *In re Kelly* (1983) 33 Cal.3d 267, 277, fn. 9; *People v. Tokash* (2000) 79 Cal.App.4th 1373, 1379, fn. 7.) The phrase "vehicles *on the premises*" unambiguously restricted any search of said vehicles to those "on the premises." There is no need to construe grammatically the rest of the vehicle search language.

The warrant in *Dumas* apparently did not explicitly refer to any vehicle(s), whereas the warrant in the present case contained the vehicle search language. Nonetheless, *Dumas* provides persuasive support for appellant's contention. Similar to the case in *Dumas*, the privilege to search created by the vehicle search language in the warrant in the present case did not constitutionally "extend beyond the place or places described therein," (*Dumas, supra,* 9 Cal.3d at p. 880), i.e., vehicles "*on* the premises." (Italics added.) Any search of the Tahoe was thus "limited by the terms of the warrant." (*Ibid.*)

The Tahoe was "not specifically mentioned in the warrant nor was it *found* in any of the places that were specifically mentioned." (*Dumas, supra,* 9 Cal.3d at p. 880, italics added.) When executing the warrant, Gonzales found the Tahoe in a city-owned public parking lot *at least* about 100 feet (and perhaps about 408 feet) from the Marmion address, not on the privately-owned premises of the Marmion address. Gonzales moved the vehicle in front of the Marmion address in part to further execute the warrant. The trial court concluded the search of the Tahoe was pursuant to the warrant because the Tahoe was "sufficiently connected" to the residence. However, an allegedly "sufficiently connected" vehicle on a city-owned public parking lot located such distance from the

10

Marmion address is hardly a vehicle "on the premises" "within the ordinary meaning of that phrase." (*Id.* at p. 880.)

Moreover, "it is highly doubtful that the magistrate issuing the warrant intended to extend its scope beyond sites . . . that the expression" (*Dumas, supra,* 9 Cal.3d at p. 880) "on the premises" "normally encompasses." (*Ibid.*) In particular, it is highly doubtful the magistrate intended the "vehicle on the premises" language to extend to a vehicle allegedly "sufficiently connected" to the residence. The vehicle search language was sufficiently definite to permit Gonzales to "identify the place intended" (*ibid.*) if the place was a vehicle "on the premises," but not if the place was a vehicle on the parking lot or if the Tahoe was allegedly "sufficiently connected" (a phrase nowhere in the warrant) to the residence. If we concluded otherwise, the vehicle search language in the warrant would be impermissibly vague and we would be construing it as having granted wholesale to Gonzales the very discretion the Fourth Amendment prohibits him from exercising.[11]

A "warrant supporting the search of a motor vehicle must, at the very least, include some explicit description of a particular vehicle or of a place where a vehicle is *later found*." (*Dumas, supra,* 9 Cal.3d at p. 881, italics added.) The warrant in this case did not contain an explicit description of the Tahoe or the place where it was later found when the warrant was being executed. We conclude the warrant did not support the search of the Tahoe. None of respondent's arguments compel a contrary conclusion.

The trial court concluded in the alternative that the good faith exception to the exclusionary rule applied. In *United States v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677] (*Leon*), "the high court held that where police officers act in objectively reasonable reliance on a search warrant that is issued by a detached and neutral magistrate but is

---

[11]     Similar reasoning applies to the warrant language commanding a search of "the location." This is not a case governed by the "single integral unit" decisions cited in footnote 10 of this opinion. Nor, in particular, is this a case in which the vehicle search language contained language such as that in *Combs* pertaining to other property appellant might have used.

*later found to be invalid for lack of probable cause*, the deterrent effect of exclusion is insufficient to warrant the exclusionary rule's application." (*People v. Willis* (2002) 28 Cal.4th 22, 30, italics added.)

The good faith rule as discussed in *Leon* and its progeny[12] is inapplicable. Each of those cases involved objectively reasonable reliance by an officer during execution of a warrant or search, *preceded* by the issuance of an invalid warrant, or other illegality, for which the executing officer was not responsible. (*Herring, supra,* 555 U.S. at p. 142.) In the present case, the search warrant was not invalid, nor was there any other illegality preceding execution of the warrant. Instead, the sole illegality in the present case occurred *during execution* of the warrant and was illegality for which the executing officer was solely responsible, i.e., Gonzales's unlawful construction of the warrant as supporting the search of the Tahoe.

Moreover, there was no ambiguity in the scope of the warrant. Gonzales's construction of the warrant was not objectively reasonable; phrased differently, as to the search of the Tahoe purportedly pursuant to the warrant, "a reasonably well trained officer would have known that the search was illegal" (*Leon, supra,* 468 U.S. at p. 922, fn. 23) in light of "all of the circumstances." (*Ibid*; cf. *Jauregui v. Superior Court* (1986) 179 Cal.App.3d 1160, 1165.)

Respondent, citing *Herring* (and a quotation from *Herring* in *People v. Robinson* (2010) 47 Cal.4th 1104), argues the contrary, claiming *Herring* stands for the proposition "police conduct which amounts to mere 'non-culpable negligence,' does not warrant 'the "extreme sanction of exclusion." ' " The argument is without merit. In *Herring*, a sheriff's department negligently failed to correct its database to reflect the recall of an arrest warrant for the defendant. An investigator who was in a neighboring county, and unaware of the failure, ultimately relied on the database to arrest the defendant. (*Herring, supra,* 555 U.S. at pp. 136-138, 140, 144-145, 147-148.)

---

[12]     *Herring v. United States* (2009) 555 U.S. 135 [172 L.Ed.2d 496] (*Herring*); *Arizona v. Evans* (1995) 514 U.S. 1 [131 L.Ed.2d 34]; *Illinois v. Krull* (1987) 480 U.S. 340 [94 L.Ed.2d 364]; *Massachusetts v. Sheppard* (1984) 468 U.S. 981 [82 L.Ed.2d 737].

*Herring* observed, "In *Leon*, we held that 'the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.' [Citations.] The same is true when evidence is obtained in *objectively reasonable reliance on a subsequently recalled warrant*." (*Herring, supra,* 555 U.S. at p. 146, italics added.) *Herring* held that if an arresting officer was objectively reasonable in relying on a subsequently recalled arrest warrant, the good faith exception to the exclusionary rule applied notwithstanding the fact that another police official, prior to said reliance, negligently failed to correct the police database to reflect the recall. (*Id.* at pp. 136-137, 139, 142-143, 145-146.)

Under *Herring* (and *Leon*), the standard applicable to the executing officer is whether said officer reasonably relied on the warrant. *Herring* did not reject that standard or adopt a new standard applicable to the executing officer. Specifically, *Herring* did not hold that, even if an executing officer's reliance on a warrant was not objectively reasonable, the good faith exception still applied as long as the executing officer's reliance on the warrant was no more than negligent. The negligence at issue in *Herring* was not that of the executing officer but that of the police official who previously had failed to correct the database, and that negligence was simply a factor to be considered in determining whether the executing officer's later reliance on the warrant was objectively reasonable. Respondent's reliance on *Herring* is misplaced.

Respondent also argues the trial court "expressly found that the officers believed in good faith that the vehicle was included within the scope of the search warrant."[13] For the reasons below, we reject respondent's argument. The trial court stated "the officers, in good faith, believed that [the warrant included the Tahoe]" and the officers "believed that [the warrant] included the vehicles connected to the property." However, there was no evidence the parking lot where Gonzales found the Tahoe was actually physically

---

[13] We defer to factual findings supported by substantial evidence, but we conduct an independent review of the legal issue of whether, based on the facts thus found, a search was constitutionally reasonable. (*Leyba, supra,* 29 Cal.3d at pp. 596-597.)

connected to the Marmion address. The trial court's statements were, in reality, statements that, in the officers' opinions, the warrant included the Tahoe and the vehicles "connected" to the property. The trial court's prefatory reference to what the officers "believed" does not change that fact.

Even if the trial court's statements were findings of fact concerning Gonzales's subjective beliefs or opinions, they were irrelevant to the good faith inquiry. In *Leon*, the high court stated, "Although we have suggested that, '[on] occasion, the motive with which the officer conducts an illegal search may have some relevance in determining the propriety of applying the exclusionary rule,' [citation], we believe that 'sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources.' [Citation.] Accordingly, our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." (*Leon, supra,* 468 U.S. at p. 922, fn. 23.)

The good faith inquiry involves consideration of all circumstances, including the particular officer's knowledge and experience, but not the officer's subjective intent. (*Herring, supra,* 555 U.S. at pp. 145-146.) The present case is not one in which the warrant was illegal but, even if it were, Gonzales's subjective beliefs concerning the search are irrelevant.

Although the parties, and court (see fn. 8, *ante*), discussed whether the search of the Tahoe was justified by the automobile exception to the warrant requirement, and the court expressly acknowledged the automobile exception was one of two possible justifications for the search of the Tahoe, the court never made a finding on whether that exception applied. We will reverse the judgment and remand the matter to permit the trial court to determine that issue. (Cf. *People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1198 [re remand]; see *People v. Superior Court (Overland)* (1988) 203 Cal.App.3d 1114, 1118-1120 [re automobile exception].) We express no opinion as to whether the automobile exception to the warrant requirement applied.

14

### *DISPOSITION*

The judgment is reversed and the matter is remanded to the trial court with directions to conduct a new hearing on the Penal Code section 1538.5 motion to suppress previously filed by appellant, and the scope of said hearing shall be limited to the issue of whether the search of the Tahoe was justified by the automobile exception to the warrant requirement of the Fourth Amendment. If the court grants the motion, then the court shall afford appellant the opportunity to withdraw his plea of no contest. If the court denies the motion, then the court shall reinstate the judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

JONES, J.[*]

We concur:

EDMON, P. J.

LAVIN, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15